IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY H. MCKENZIE,<br><br>        Plaintiff,<br><br>   vs.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>        Defendant. | 1:10cv02036 AWI DLB<br><br>FINDINGS AND RECOMMENDATIONS<br>REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT |

## BACKGROUND

Plaintiff Mary H. McKenzie ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendations to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff protectively filed for DIB on April 10, 2006. AR 111-13, 132. She alleged disability since February 21, 2001, due to back injury, carpal tunnel syndrome, diabetes, high blood

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

pressure, high cholesterol and memory loss. AR 135-36. After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 73-76, 79-83, 85. On January 13, 2009, ALJ Brenton L. Rogozen held a hearing. AR 42-67. ALJ Rogozen issued a partially favorable decision on February 19, 2009, finding Plaintiff disabled beginning on October 15, 2004 and ending on August 29, 2007. AR 9-26. On September 2, 2010, the Appeals Council denied review. AR 1-4.

Hearing Testimony

ALJ Rogozen held a hearing on January 13, 2009, in San Jose, California. Plaintiff appeared with her attorney, Harvey P. Sackett. Vocational expert Darlene McQuary also appeared. AR 44.

At the outset of the hearing, Plaintiff's counsel requested that Plaintiff's previous application for DIB filed on July 12, 2004, be re-opened. The ALJ agreed to consider the request. AR 44-45.

Plaintiff was born in 1942 and was 66 years old at the time of the hearing. Plaintiff's counsel indicated that they were going to talk about Plaintiff's condition for the period between February 2001, and when Plaintiff turned 65 in July of 2007. Plaintiff's counsel explained that he was not going to ask Plaintiff questions about her current condition, stating "because legally it doesn't matter." AR 46.

Plaintiff completed the twelfth grade, but did not graduate from high school because she was 52 credits short. She has no problems reading and writing in simple English. In her last 15 years of employment, she checked groceries and worked part-time in liquor, produce and milk areas of the grocery store. AR 47-53.

Plaintiff stopped in working in February 2001 because she fell at work. AR 53. She went on Worker's Compensation and received checks for one year. During that time, she was not seen by a vocational rehabilitation person or vocational expert. AR 54-55. In 2001, her back, ankle and hands kept her from going back to work. She has had ankle surgeries and she fractured her foot around the time she stopped working. Her ankle was affecting her ability to do her job. She could not stand very long because she would "hurt very bad" from her back and ankle. She couldn't stand and she couldn't lift because her back was hurting all the time. Dr. Hopkins suggested that she go off work.

He has never suggested anything to the contrary. AR 56-57. At the time she stopped working, she could stand comfortably for fifteen minutes and was using a cane. She was not using the cane in the store. She had surgery on her foot after she stopped working. Her ankle still bothers her. AR 57.

The vocational expert ("VE") also responded to questions. The VE reported that the DOT described Plaintiff's past job as retail grocery clerk as being light and semi-skilled with an SVP of 3. The VE disagreed with the DOT, testifying that the grocery clerk was medium work. The VE based this opinion on her own experience, the items that can be lifted and by the claimant's testimony. AR 59. The VE did not believe that all retail clerks were medium and that there would be some light retail clerks. AR 61-62. The VE believed that there would be some vocational adjustment between working in a grocery store and working in a department store. Plaintiff's skills were not transferrable to another setting. AR 63-66.

Medical Record

On January 1, 2001, Dr.William Hopkins opined that Plaintiff was expected to be released to return to work on or about January 15, 2002, if her treatment was completed and she responded well. AR 226.

On January 18, 2001, Plaintiff reported to Dr. Hopkins that she continued to function very well, but she was experiencing increasing pain on getting out of bed, rising from a chair, sitting and similar activities. Examination demonstrated marked sensitivity in the lumbar paravertebral region and she had clear-cut zygapophyseal pain. Dr. Hopkins recommended a zygapophyseal/facet block. AR 258.

On February 1, 2001, Plaintiff underwent left L5-S1, left L4-5, right L5-S1, right L4-5 and right L3-4 zygapophyseal (facet) blocks. AR 201-03.

A lumbar spine MRI on March 1, 2001, showed mild to moderate spinal stenosis and bilateral foraminal narrowing at L5-S1 secondary to a combination of diffuse circumferential disc bulging and hypertrophy of facets and ligamentum flavum. She also had minimal diffuse circumferential disc bulging at T12-L1 and L1-2, degenerative disc disease throughout the lower thoracic and lumbar spine and minimal retrolisthesis of L5 on S1. AR 370-71.

On April 5, 2001, Plaintiff underwent a right L5 selective nerve root block and transforaminal epidural for persistent right L5 radiculopathy. AR 199-200. She felt excellent pain relief with the left block. AR 253-55.

On June 6, 2001, Plaintiff saw Dr. Hopkins for low back pain. She underwent a Radio Frequency Thermal Annuloplasty. Following the procedure, she was instructed to wear a back brace for several weeks. AR 186-91, 323.

On June 15, 2001, Dr. Hopkins stated that Plaintiff was unable to work through August 25, 2001. AR 221. On June 18, 2001, he noted that she remained on total temporary disability. AR 251.

On July 19, 2001, Plaintiff sought treatment from Dr. Eugene Carragee at Stanford Hospital and Clinics for complaints of low back pain with right lower extremity pain associated with right thigh pain, which was constant. AR 217. On physical examination, Plaintiff could walk normally without difficulty, straight-leg raising was negative and her motor strength was 5/5 bilaterally. A two-year-old MRI showed a high intensity signal in the anulus at the L4-5 level, which might represent a symptomatic anulus tear. Dr. Carragee diagnosed low back and leg pain without any evidence of radiculopathy. Dr. Carragee recommended a new MRI and advised Plaintiff to stay as active as possible. AR 217-18.

On August 9, 2001, Dr. Hopkins opined that Plaintiff could return to work on September 30, 2001 only if diagnostic and therapeutic procedures were completed. AR 220. She complained of persistent reexacerbation of her right leg pain extending to her foot. On examination, her reflexes continued to be intact, but there was marked pain and slight hyperpathia over the dorsum of the foot. Review of her MRI revealed generalized degenerative spine changes, L5-S1 and L4-5 moderate spinal stenosis, ligamentum falvum hypertrophy and facet hypertrophy causing mild bilateral foraminal narrowing. Dr. Hopkins diagnosed degenerative spine disease, discogenic as well as facet hypertrophy producing radicular pain at L4 and L5. Dr. Hopkins recommended a selective nerve root block, which would provide dramatic, but temporary relief. AR 249.

On October 3, 2001, Plaintiff underwent a selective nerve root block for persistent and

4

increasing back pain.  AR 196, 197-98.

On October 22, 2001, Plaintiff complained that two days previously she awoke with severe pain radiating from her low back down her entire right leg.  She reported being unable to lift or cross her right leg.  AR 247.

On October 23, 2001, Dr. Hopkins opined that Plaintiff could not work through November 8, 2001.  AR 227.

On December 12, 2001, Plaintiff reported previous facial and leg weakness, which appeared to be Bell's palsy and resolved promptly.  She also had chest pain, but a heart scan and electrocardiogram were reportedly negative.  Plaintiff told Dr. Hopkins that her back pain was completely gone following her last block, but she continued to complain of right knee pain that increased with walking.  On examination, her knee showed minimal, if any, swelling, but was painful to palpation both laterally and medially.  Dr. Hopkins diagnosed resolved or quiescent low back pain and knee pain of undetermined etiology.  He recommended that Plaintiff continue some lumbar extensor exercises as she had achieved pain relief from her last block and that she obtain a right knee MRI.  AR 245.

The right knee MRI completed on January 8, 2002, showed no evidence of internal derangement.  There was some subcutaneous edema anterior to the patella likely secondary to a contusion of the soft tissues.  AR 366-67.

On January 25, 2002, Dr. Hopkins completed a treating Physician's Report of Disability Status form.  He opined that Plaintiff was precluded from returning to work at her pre-injury occupation, but she was able to participate in vocational rehabilitations services with no lifting/bending and no standing for more than 45 minutes.  He further opined that Plaintiff was physically able to perform light duties with no lifting, no bending and no standing more than 45 minutes.  AR 225.

On February 7, 2002, Dr. Hopkins opined that Plaintiff had been continuously disabled from February 25, 2001 through February 15, 2002.  She was estimated to be able to return to work on March 15, 2002.  AR 210-12.

5

On March 6, 2002, Dr. Hopkins noted that Plaintiff had "excellent transient relief" from a zygapophyseal block. He noted that her radicular pain appeared to not be so dramatic when she was able to maintain exercise. Her zygapophyseal pain appeared to be significant, but was dramatically relieved by the block. Dr. Hopkins recommended a permanent block. AR 366.

On April 12, 2002, Plaintiff again saw Dr. Hopkins for low back pain. She was to undergo a radio frequency thermal coagulation. AR 195. On April 15, 2002, Plaintiff underwent a lumbar dorsal ramus median branch rhizotomy, L5 and L4. AR 194, 206.

On August 23, 2002, Dr. Hopkins prepared a progress note. He indicated that Plaintiff had been doing reasonably well, but increased lifting and activity intensified her pain significantly. She reported to be doing a lot of walking in attempt to relieve her pain, but this had been inadequate. On examination, she rose from the chair with a mild but clear-cut antalgic posture and ambulated with a mild antalgic posture. Her deep tendon reflexes were normal throughout. Palpation demonstrated moderate to marked midline pain and moderate paravertebral pain. Dr. Hopkins diagnosed discogenic pain, zygapophyseal pain and lumbar extensor dysfunction. He recommended a repeat MRI, zygapophyseal blocks, lumbar epidural steroid injection and, very importantly, lumbar extensor rehabilitation trial. AR 240-41.

On October 7, 2002, Plaintiff reported that her pain was significantly less as long as her activity was much less. Dr. Hopkins noted marked joint pain bilaterally. He diagnosed facet pain and radiculopathy and recommend a joint block and repeat MRI. AR 239.

On March 12, 2003, Plaintiff reported that she was not taking any medication. Dr. Hopkins opined that Plaintiff's clinical status had not changed and he questioned whether it was worsening. AR 238.

On October 14, 2004, Dr. L. Neena Madireddi completed a consultative orthopedic evaluation. On examination, Plaintiff had full range of motion of her neck and upper extremities with normal strength. She had no focal tenderness on palpation of her thoracolumbar paravertebral muscles and gluteal muscles. She declined lumbar range of motion in every single plane due to pain. She had full range of motion of her hips, knees and ankles with no tenderness or atrophy. Straight

leg raising was negative bilaterally. Her station and gait were normal, but she declined to squat, kneel, stand on toes, stand on heels, balance on one foot or tandem walk due to pain. Dr. Madireddi diagnosed mechanical lower back pain and opined that Plaintiff could lift and carry 25 pounds occasionally and 10 pounds frequently. She should avoid repetitive stooping, crouching and crawling, but could perform these activities occasionally. She had no restriction on kneeling, climbing steps or balancing. She would be able to sit for 6-8 hours cumulatively and would be able to stand and walk 6-8 hours cumulatively. She had no noted restrictions of her upper extremities. AR 261-63.

On August 27, 2005, Dr. Madireddi completed another consultative orthopedic evaluation. Plaintiff complained of chronic lower back pain, foot pain, and hand pain. She reported that she could not stand, sit, lie down, shower, bathe, grocery shop or wash clothes due to pain. On physical examination, Plaintiff had full range of motion of her cervical spine. She declined lumbar range of motion in all planes due to pain. She had full range of motion of her shoulders, elbows, wrists, hips, knees and ankles. Bilateral knee examination revealed some crepitus and Plaintiff stated that her knees were painful. Her station and gait were unremarkable, but slow. She declined to squat, kneel, stand on toes and heels, and balance on one foot due to pain. Dr. Madireddi diagnosed chronic lumbar pain possibly secondary to lumbar osteoarthritis and lumbar disc disease, chronic bilateral lower extremity pain involving the knees and feet possibly secondary to osteoarthritis or tendinitis, and bilateral wrist and hand pain, possibly secondary to tendinitis and possible carpal tunnel syndrome. Dr. Madireddi opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. She should avoid repetitive stooping, crouching and crawling activities, but could perform these activities occasionally. She had no restriction of the upper extremities. She was precluded from repetitive, but not occasional handling activities. She had no restrictions in feeling or in fingering. She could stand and walk 4 hours cumulatively and could sit 6 to 8 hours cumulatively. She should avoid more than occasional kneeling, climbing and crawling activities. AR 264-65.

A lumbar spine x-ray completed on August 29, 2005, revealed moderate degenerative

changes most pronounced at the L5-S1 level.  AR 266.

On June 26, 2006, Plaintiff sought emergency room treatment for a right ankle fracture.  On examination, she had no tenderness to palpation in her back.  She was given a cast, crutches and Vicodin for pain.  AR 354-58, 359.

On July 10, 2006, Dr. Gordon L. Levin completed an orthopedic evaluation.  Plaintiff reportedly slipped on a grassy hill while she was ready to go fishing and twisted her right ankle.  X-rays revealed a bimalleolar fracture of the right ankle.  Dr. Levin planned to perform an open reduction internal fixation.  AR 272.  On July 11, 2006, Plaintiff underwent an open reduction internal fixation of her right ankle.  AR 274, 278-79.

An April 2007 bone mineral density study of Plaintiff's lumbar spine and left hip was normal.  AR 293.

On April 13, 2007, Plaintiff saw Dr. Richard Cherlin for her diabetes.  AR 333.  In May and 2007, Plaintiff saw Dr. Cherlin and reported that she felt well.  He noted her blood sugar levels.  AR 332.

On May 24, 2007, Dr. Lara Salamacha completed a consultative orthopedic evaluation.  Plaintiff complained of low back pain and carpal tunnel syndrome.  Plaintiff reported that she could walk for two hours at a time and did this every morning for fitness.  She also could stand for 20-30 minutes and sit for 30 minutes before needing to change position.  She was able to perform all activities of daily living and self care.  On examination, Plaintiff had a mildly antalgic gait favoring her left ankle, which she had recently sprained while vacuuming her closet.  She declined toe walking secondary to pain in both ankles and feet.  She was able to walk on both heels with adequate foot strength.  Her low back examination revealed tenderness in the midline and in the paraspinous regions bilaterally.  Facet signs were strongly positive.  Following examination, Dr. Salamancha opined that Plaintiff could stand and walk for up to six hours in an eight-hour day.  She had no restrictions regarding sitting with routine position changes.  She could lift 10 pounds frequently and 20 pounds occasionally.  She could perform occasional bending, with rare stooping or crouching due to her repetitive ankle sprains.  She could perform frequent, but not constant, reaching, handling,

feeling, fingering and grasping. She had no relevant visual, communicative or workplace environmental limitations. AR 295-99.

On May 30, 2007, Dr. Evangeline Murillo, a state agency physician, completed a Psychiatric Review Technique form. Plaintiff did not have a medically determinable psychiatric impairment. AR 300-10.

On July 30, 2007, Plaintiff saw Dr. Cherlin to learn about insulin. Her blood sugars were "still 200's." AR 331.

On August 29, 2007, Plaintiff told Dr. Cherlin that she felt great. Dr. Cherlin noted her blood sugars and indicated she had no chest pain or shortness of breath. AR 331.

A November 4, 2008, lumbar spine MRI revealed mild to moderate multi-level degenerative changes in the lumbar spine. She also had mild spinal canal stenosis at the L4-5 level and moderate left lateral recess narrowing due to diffuse disc bulge and hypertrophic changes at the facet joints. AR 351.

On November 17, 2008, Dr. Hopkins performed right and left L4, L5 selective nerve root blocks for low back pain and lumbar spondylosis. AR 365.

ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements and had not engaged in substantial gainful activity since February 21, 2001. The ALJ further found that Plaintiff had the severe impairment of back pain. Despite this impairment, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work for the period from her alleged onset date to October 14, 2004. For the period from October 15, 2004 through August 29, 2007, she had the RFC to perform sedentary work, was unable to perform her past relevant work and there were no other jobs in the national economy that she could perform. The ALJ determined that medical improvement occurred as of August 30, 2007. Based on her medical improvement, the ALJ found that for the period after August 29, 2007, Plaintiff had the RFC to perform the full range of light work. The ALJ concluded that for the period from her alleged onset date and prior to October 15, 2004, and the period after August 29, 2007, Plaintiff could perform her past relevant

1  work as a grocery clerk.  AR 17-25.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  See *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Here, Plaintiff contends that the ALJ's finding of "medical improvement" is not supported by substantial evidence.  Plaintiff also contends that the ALJ erred in finding that she could return to her past relevant work.

## DISCUSSION

### A. Medical Improvement

Plaintiff argues that the ALJ's finding of medical improvement as of August 2007 is not supported.  The Commissioner counters that Plaintiff's argument is inapposite because, as of that date, Plaintiff had already reached the full retirement age of 65 and was no longer entitled to disability benefits.  20 C.F.R. § 404.316(b)(2) (a claimant's entitlement to disability benefits ends the month before the month she reaches full retirement age).  The Commissioner is incorrect.  According to the implementing regulations, full retirement age has been 65, but is being gradually raised to age

10

1  67 beginning with people born after January 1, 1938.  20 C.F.R. § 404.409.  Plaintiff, who was born
2  in July 1942, did not reach full retirement age until May 2008, when she reached 65 years and 10
3  months.  20 C.F.R. §404.409(a) (identifying full retirement age for persons born between 1/2/1942
4  and 1/1/1943 as 65 years and 10 months).  Thus, Plaintiff would be eligible for disability benefits at
5  least through April 2008 (*e.g.,* the month before the month she reaches full retirement age).

6  　　　At the hearing, Plaintiff's counsel identified the relevant time period as the date when she
7  became disabled in February 2001 through the date when she turned 65 in July 2007.  AR 46.  The
8  Commissioner suggests that the Court should refuse to entertain an argument about any continuing
9  disability beyond July 2007 because Plaintiff's counsel conceded this issue at the hearing.
10 Opposition, p. 5.  The Court declines to accept the Commissioner's suggestion.  The ALJ did not
11 limit the relevant time period as defined by Plaintiff's counsel.  Indeed, the ALJ found that Plaintiff's
12 disability continued at least through August 29, 2007.  AR 17-25.

13 　　　The Commissioner does not address Plaintiff's substantive argument; that is, whether the
14 ALJ's finding of medical improvement as of August 30, 2007, is supported by substantial evidence.
15 Once a claimant has been found to be disabled, "a presumption of continuing disability arises in her
16 favor."  *Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir.1985) (citing
17 *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir.1983)).  The Commissioner has the "burden of
18 producing evidence sufficient to rebut this presumption of continuing disability."  *Id.*; *see also*
19 *Murray*, 722 F.2d at 500 ("The Secretary ... has the burden to come forward with evidence of
20 improvement.").  Relevant here, a claimant's benefits may be terminated where the Commissioner
21 produces substantial evidence that: "(A) there has been any medical improvement in the individual's
22 impairment or combination of impairments (other than medical improvement which is not related to
23 the individual's ability to work), and (B) the individual is now able to engage in substantial gainful
24 activity."  42 U.S.C. § 423(f)(1). The applicable regulation defines "medical improvement" as
25 follows:

26 　　　Medical improvement is any decrease in the medical severity of your impairment(s)
　　　which was present at the time of the most recent favorable medical decision that you
27 　　　were disabled or continued to be disabled. A determination that there has been a

28                                              11

> decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)....

20 C.F.R. § 404.1594(b)(1). The Commissioner evaluates continuing disability under an eight-part analytical framework. 20 C.F.R. § 404.1594(f)(1)-(8).

In this case, the ALJ determined that Plaintiff had experienced medical improvement as of August 30, 2007, primarily because she told Dr. Cherlin that she had no pain and felt "great." AR 24. Based on the entire record, however, the ALJ's conclusion of medical improvement is not supported by substantial evidence. Plaintiff's August 29, 2007 comment to Dr. Cherlin that she felt "great" provides little evidence of improvement in her back pain. *See Kellough v. Heckler,* 785 F.2d 1147, 1153 (4th Cir.1986) (finding "isolated references in physician's notes to 'feeling well'" was an insufficient basis for rejecting subjective limitations; notes did not provide substantial evidence demonstrating that claimant could perform past relevant work), cited with approval in *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001). This is particularly true because the comment was made to a physician treating Plaintiff for diabetes-related issues, not lower back pain. The notes themselves make no mention of the range of activity that Plaintiff could perform nor do they establish that she no longer experienced back pain. AR 330-33. Further, the ALJ incorrectly found that Plaintiff reported "no pain." AR 24. Rather, Plaintiff's physician noted that Plaintiff had "no chest pain/SOB." AR 331. The ALJ's subsequent finding that "the record shows an absence of on-going treatment for back pain thereafter" also is not accurate. AR 25. According to the record, on November 4, 2008, Plaintiff underwent a MRI, which revealed mild to moderate multi-level degenerative changes in the lumbar spine and moderate left lateral recess narrowing due to diffuse disc bulge and hypertrophic changes at the facet joints. AR 350. Thereafter, on November 17, 2008, Dr. Hopkins administered Plaintiff right and left L4, L5 selective nerve root blocks for her low back pain and lumbar spondylosis. AR 365.

Based on the foregoing, the ALJ's finding of medical improvement as of August 30, 2007, is not supported by substantial evidence.

**B.    Past Relevant Work**

Plaintiff argues that the ALJ committed error by finding that she could return to her past relevant work for the period after August 30, 2007, based on her RFC for light work.  In particular, Plaintiff faults the ALJ for rejecting the vocational expert's testimony, which deviated from the DOT, that Plaintiff's past relevant work was medium, not light, work.  AR 59.

Given the Court's determination that the ALJ's finding of medical improvement as of August 2007 is not supported by substantial evidence, it is not necessary to address whether Plaintiff could return to her past relevant work after that date.

**C.    Remand**

The decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate."  *McAllister*, 888 F.2d at 603 (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings . . . or where the record has been thoroughly developed.").

Here, the Court finds that no useful purpose would be served by further administrative proceedings and that the record has been fully developed.  A rehearing would simply delay receipt of benefits for the period after August 29, 2007, through the date Plaintiff reaches full retirement age. Accordingly, the Court recommends reversal and an award of benefits.

**RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole.  Accordingly, this Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED and that the matter be REVERSED AND REMANDED for the award of benefits to

1  Plaintiff.

2      These findings and recommendations will be submitted to the Honorable Anthony W. Ishii pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

    Dated: **December 2, 2011**          **/s/ Dennis L. Beck**
                                          UNITED STATES MAGISTRATE JUDGE